UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| SCOTT WIDVEY, | ) | CIV. 09-5044 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | ON DEFENDANTS' |
| JENNIFER MINK; | ) | MOTIONS TO DISMISS |
| ALAN MORRIS; and | ) | |
| PAULA ROBB, individually and in | ) | |
| their official capacities, | ) | |
| | ) | |
| Defendants. | ) | |

## INTRODUCTION

Plaintiff Scott Widvey, appearing *pro se*, has filed a complaint alleging

claims against defendants for alleged violations of his constitutional rights

under 42 U.S.C. § 1983. Pending before the court are motions to dismiss

Mr. Widvey's complaint by each of the three defendants. These motions were

referred to this magistrate judge by the district court, the Honorable

Jeffrey L. Viken, for a report and recommendation pursuant to 28 U.S.C.

§ 636(b)(1)(B). See Docket No. 38. For the reasons discussed below, the court

recommends granting the motions by defendants.

## FACTS

Scott Widvey was serving a term of probation imposed by a state court

judge in South Dakota on factual matters not concerned with these

proceedings. He and his then-girlfriend, defendant Jennifer Mink, formed a

business together called JENCO.  Mr. Widvey alleges that, after he broke up

with Ms. Mink, she contacted defendant Paula Robb, Mr. Widvey's state

probation officer, and told Ms. Robb that Mr. Widvey had violated the terms of

his probation by embezzling from JENCO.  Mr. Widvey alleges that Ms. Robb

and state revenue agent defendant Alan Morris failed to investigate Ms. Mink's

allegation and pursued a revocation of probation action against him.

Mr. Widvey asserts that the defendants gave false testimony at his probation

revocation hearing.  That action resulted in Mr. Widvey's probation being

revoked.   He was sentenced to a term of four years incarceration as a result.

        Mr. Widvey appealed the state court's judgment revoking his probation to

the South Dakota Supreme Court.  His appellate brief is available via the

internet and that document shows that Mr. Widvey raised the following

arguments on appeal, among others.  See 2008 WL 5041381.  Mr. Widvey

alleged that the state court erred in finding that he violated the terms of his

probation by embezzling from JENCO.  See id. at pages 8-9.  He alleged that

Ms. Robb testified at the probation revocation hearing (hereinafter "hearing"),

that she did nothing to corroborate Ms. Mink's allegations as to Mr. Widvey.

Id.  Further, Mr. Widvey alleged on appeal that Ms. Robb testified at the

hearing that Ms. Mink's allegations against Mr. Widvey did not arise until after

their romantic relationship had dissolved and Ms. Mink learned that

Mr. Widvey was romantically involved with another woman. Id. Mr. Widvey further alleged that Ms. Mink's demeanor was angry and vindictive. Id.

On appeal, Mr. Widvey asked the South Dakota Supreme Court to overturn the state court's judgment revoking his probation and sentencing him to a term of incarceration. Id. Mr. Widvey argued that the lower state court had erred in crediting Ms. Mink's testimony, which he characterized as "highly questionable" given the timing of her report of violations to Ms. Robb and the anger Ms. Mink displayed. Id.

In an unreported table decision, the South Dakota Supreme Court affirmed the lower state court's judgment on September 2, 2008. See State v. Widvey, 757 N.W. 2d 328 (S.D. 2008) (Table). A copy of that decision, attached to Ms. Mink's answer in this case, indicates that the court disposed of the matter solely on the briefs and that, as to the factual allegations, there was clearly sufficient evidence to support the lower court's findings of fact. See Docket 14-2.

Independent criminal charges based on Ms. Mink's allegations concerning JENCO were also filed against Mr. Widvey. He availed himself of his right to a jury trial on those charges and, in December, 2008, was acquitted. See Docket 18-1 through 18-8.

It is on the basis of these actions in state court that Mr. Widvey asserts his current § 1983 complaint, alleging that Ms. Mink, Ms. Robb, and

Mr. Morris violated his constitutional rights. He asserts that his rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments were violated by the defendants. Mr. Widvey seeks compensatory and punitive damages as well as costs and attorney's fees.

**DISCUSSION**

**A.      Standard for Ruling on Motions Pursuant to Fed. R. Civ. P. 12(b)(6)**

All of the defendants' motions are based on Fed. R. Civ. P. 12(b)(6), which provides for dismissal if the plaintiff has failed to state a claim upon which relief can be granted. The United States Supreme Court has recently addressed the standard that district courts are to apply to motions to dismiss under Rule 12(b)(6). That standard is described in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937 (2009).

Twombly involved a class action lawsuit brought by a putative class of subscribers of local telephone and/or high speed internet services against various Incumbent Local Exchange Carriers (hereinafter "ILECS"). Twombly, 550 U.S. at 548. ILECS are regional service monopolies formed after the 1984 divestiture of AT &T's local telephone business. Id. The divestiture also formed an independent long-distance marker from which the ILECS were excluded. Id. In 1996, Congress passed the Telecommunications Act, 110 Stat. 56, and withdrew approval of the ILECs' monopolies. Id. After this point, the ILECS

were permitted to enter the public market for long-distance service, conditioned upon each ILEC's "obligation . . . to share its network with competitors," called "competitive local exchange carriers" (CLECs).  Id. (quoting Verizon Communications Inc. v. Law Offices of Curtis v. Trinko, LLP, 540 U.S. 398, 402 (1999)).

The plaintiff class brought an antitrust suit under § 1 of the Sherman Act, which prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations."  26 Stat. 209, as amended, 15 U.S.C. § 1 (2004).  The plaintiffs claimed that the ILECs unlawfully conspired to restrain trade by inflating charges for telephone and Internet services in two ways. Twombly, 550 U.S. at 550.  First, the plaintiffs alleged that the ILECs engaged in "'parallel conduct' in their respective service areas to inhibit the growth of upstart CLECs"; and second, that the ILECs agreed to "refrain from competing against one another," evidenced (according to the plaintiffs) by the ILECs' "common failure" to pursue attractive business opportunities in contiguous markets and by a statement by one ILEC's chief executive officer that competing in another ILEC's territory wasn't "right."  Twombley, 550 U.S. at 550-51.

The complaint phrased its allegations in another way as well:  "Plaintiffs allege upon information and belief that [the ILECs] have entered into a

contract, combination or conspiracy to prevent competitive entry in their respective . . . services markets and have agreed not to compete with one another and otherwise allocated customers and markets to one another." Id. (quoting Amended Complaint at ¶ 51, App. 27, Twombly v. Bell Atlantic Corp., 313 F.Supp.2d 174 (S.D.N.Y. 2003)(No. 02 Civ. 10220 (GEL)).

The United States District Court for the Southern District of New York dismissed the complaint, holding that allegations of parallel business conduct, standing alone, did not state a claim under § 1 of the Sherman Act. Twombly, 550 U.S. at 552. The district court held that the plaintiffs were required to allege additional facts tending to "exclude independent, self-interested business conduct as an explanation for the parallel conduct." Id. The court held that mere allegations of parallel business conduct, without more, were merely conclusory and did not suffice to state a claim under § 1 of the Sherman Act. Id.

The Court of Appeals for the Second Circuit reversed, holding that the district court applied the wrong standard in determining whether plaintiffs failed to state a claim under § 1 of the Sherman Act. Id. at 553 (quoting Twombly v. Bell, 425 F.3d 99, 114 (2d Cir. 2005). The Court of Appeals held that an antitrust claim based on parallel conduct did not require plaintiffs to plead "plus factors" in order to survive a Rule 12(b)(6) motion. Id. Although the Court of Appeals held that plaintiffs were required to plead facts that

include conspiracy or agreement "among the realm of 'plausible' possibilities in order to survive a motion to dismiss," it invoked Conley and said that to properly dismiss a claim under Rule 12(b)(6), the court "would have to conclude that there is *no set of facts* that would permit a plaintiff to demonstrate that the particular parallelism asserted was the product of collusion rather than coincidence." Twombly, 425 F.3d at 114 (emphasis added) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The court determined that the defendant ILECs failed to satisfy the "no set of facts" standard, and accordingly reversed the district court's ruling. Twombly, 550 U.S. at 553.

The Supreme Court granted certiorari and reversed, abrogating Conley's "no set of facts" language. Id. Instead, the Court adopted a standard by which plaintiffs must plead "only enough facts to state a claim to relief that is *plausible* on its face." Id. at 570 (emphasis added). The Court noted that the Sherman Act prohibits only those restraints of trade "effected by a contract, combination, or conspiracy" and stated that the relevant inquiry was thus whether the challenged conduct "stem[s] from independent decision or from an agreement, tacit or express." Id. at 554 (quoting Theatre Enterprises, Inc. v. Paramount Film Distributing Corp., 346 U.S. 537, 540 (1954)). The Court indicated that businesses in a concentrated market commonly engage in conscious parallel conduct due to "shared economic interests and their

7

interdependence with respect to price and output decisions" and this conduct, by itself, is not unlawful. Twombly, 550 U.S. at 553-54 (quoting Brooke Group Ltd. v. Brown & Williamson Tobacco Corp., 509 U.S. 209, 227 (1993)).  The Court then found that the acts undertaken by the defendant ILECs constituted "interdependent parallelism," which was not sufficient to establish the contract, combination, or conspiracy requirement imposed by the Sherman Act.  Id. at 554.

The Court then discussed the applicability of Federal Rule 8(a)(2) to claims brought under the Sherman Act.  Id. at 554-55.  According to Rule 8, a plaintiff must plead only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The Court acknowledged that a complaint does not need "detailed factual allegations" to survive a motion to dismiss, but emphasized a plaintiff's obligation to provide the grounds for his entitlement to relief as requiring more than a mere recital of the elements of his cause of action.  Twombly, 550 U.S. at 555 (citing Papasan v. Allain, 478 U.S. 265 (1986)).  The Court imposed a "plausibility standard" and held that a claim under § 1 of the Sherman Act "requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made." Twombly, 550 U.S. at 556.  The Court rejected the notion that conclusory allegations of agreement were enough to survive a 12(b)(6) motion to dismiss a claim under the Sherman Act.  Id. at 556-57.  The Court explained, "[t]he need

at the pleading stage for allegations plausibly suggesting (not merely consistent with) agreement reflects the threshold requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft to 'sho[w] that the pleader is entitled to relief.' " Id. at 557 (quoting Fed. R. Civ. P. 8(a)(2)). The Court said the plaintiff must enhance his complaint with more specific factual allegations in order to cross the line between possibility and plausibility of entitlement to relief. Id.

In 2009, the Supreme Court decided Ashcroft v. Iqbal, and affirmatively applied to all civil actions the standard set forth in Twombly for determining whether a complaint is sufficient to survive a motion to dismiss. Ashcroft v. Iqbal, ___ U.S. ___ , 129 S.Ct. 1937 (2009). Ashcroft put to rest any doubt whether Twombly was to be applied exclusively to antitrust litigation, or whether it had broader application to other civil cases. Because Twombly interpreted and applied Federal Rule 8, the Ashcroft Court said, Twombly was properly applied to "all civil actions and proceedings in the United States district courts." Id. at 1953 (citing Fed. R. Civ. P. 1). Twombly thus delineates the proper pleading standard not only for antitrust cases, but for all civil actions.

Ashcroft involved Javaid Iqbal, a Muslim Pakistani who was arrested on criminal charges in the United States following the September 11, 2001, terrorist attacks. Ashcroft, 129 S.Ct. at 1942. Iqbal claimed his constitutional rights were violated by governmental actors while he was in custody, and he

brought suit against various federal officials, including John Ashcroft, former

Attorney General of the United States, and David Mueller, the Director of the

Federal Bureau of Investigation ("FBI").  Id.  Iqbal's complaint alleged that

Ashcroft and Mueller "adopted an unconstitutional policy that subjected [Iqbal]

to harsh conditions of confinement on account of his race, religion, or national

origin" in violation of Iqbal's rights under the First and Fifth Amendments to

the Constitution.  Id. at 1943, 1944;  See ¶ 96, App. to Pet. for Cert., at 172a-

173a.

Ashcroft and Mueller moved to dismiss the complaint pursuant to

Federal Rule 12(b)(6), for Iqbal's "failure to state sufficient allegations to show

their own involvement in clearly established unconstitutional conduct."

Ashcroft, 129 S.Ct. at 1944.  The United States District Court for the Eastern

District of New York denied the motion.  Id.; See Elmaghraby v. Ashcroft, No.

04-01809, 2005 WL 2375202 (E.D.N.Y. Sept. 27, 2005).  The district court, in a

decision rendered prior to Twombly, relied on Conley v. Gibson to hold that "it

cannot be said that there [is] no set of facts on which [Iqbal] would be entitled

to relief as against" Ashcroft and Mueller.  Id. (citing Conley v. Gibson, 355 U.S.

41 (1957)).  Petitioners Ashcroft and Mueller filed an interlocutory appeal to the

United States Court of Appeals for the Second Circuit and, while the appeal

was pending, the Supreme Court decided Twombly.  Id.; See Twombly v. Bell,

550 U.S. 544 (2007).

In deciding petitioners' case, the Court of Appeals discussed Twombly at length and found that the decision required the court to apply a "flexible 'plausibility standard,'" rather than a universal standard of heightened fact pleading.  Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007).  The Court of Appeals noted the Twombly Court's disavowal of Conley's "no set of facts" language and explained that the Twombly approach "obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*."  Id. (emphasis in original); See Twombly, 550 U.S. at 545-46.  However, the Court of Appeals found that Iqbal's claims did not require amplification, and affirmed the district court's judgment.  Id.; Iqbal, 490 F.3d at 157-58.

Citing concerns at the prospect of subjecting governmental officials to the burdens of discovery and the confusion about the Supreme Court's precedents interpreting Rule 8(a), Judge Jose Cabranes concurred in the court's ruling and invited the Supreme Court to address the appropriate pleading standard "at the earliest opportunity."  Iqbal, 490 F.3d at 178 (Cabranes, J., concurring).

The Court granted certiorari and reversed the Court of Appeals' decision.  Ashcroft, 129 S.Ct. at 1945.  The Court noted Rule 8(a)'s requirement of a "short and plain statement of the claim showing that the pleader is entitled to relief."  See Fed. R. Civ. P. 8(a).  The Court expressly adopted Twombly's announcement that Rule 8 does not require "detailed factual allegations," but

does require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Ashcroft, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555). The Court reaffirmed Twombly's determination that a complaint offering mere "labels and conclusions" or a "formulaic recitation of a cause of action" is insufficient to survive a motion to dismiss under Rule 12(b)(6). Id.

The Court explained that to survive a motion to dismiss, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Id. (quoting Twombly, 550 U.S. at 570). The plausibility standard requires that the plaintiff allege more than a "sheer possibility" that the defendant committed the alleged unlawful conduct, but does not impose a "probability requirement" at the pleading stage. Id. (quoting Twombly, 550 U.S. at 556). The plaintiff must, however, allege sufficient facts to "raise a reasonable expectation that discovery will reveal evidence of [the conduct complained of]." Twombly, 550 U.S. at 556. Where a plaintiff pleads facts that are merely consistent with a defendant's liability, he has not "nudged [his] claim across the line from conceivable to plausible," and the complaint must be dismissed. Ashcroft, 129 S.Ct. at 1949 (citing Twombly, 550 U.S. at 547). There is no heightened requirement of fact pleading of specifics—only a requirement that the plaintiff plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.

The Court identified two "working principles" underlying its decision in Twombly. Ashcroft, 129 S.Ct. at 1949. First, courts are not required to accept as true legal conclusions "couched as [] factual allegation[s]" contained in a complaint. Id. (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (quoting Twombly, 550 U.S. at 555). Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Ashcroft, 129 S.Ct. at 1950.

Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. This determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. (quoting Iqbal, 490 F.3d, at 157-158. Where the plaintiff's allegations are merely conclusory, the court may not infer more than the mere possibility of misconduct, and the complaint has *alleged*–but has not "show[n]"–that he is entitled to relief as required by Rule 8(a)(2). Ashcroft, 120 S.Ct. at 1950.

The Court explained that a reviewing court should begin by identifying pleadings that are not entitled to the presumption of truth because they are merely conclusory. Id. Legal conclusions must be supported by factual allegations demonstrating the grounds for a plaintiff's entitlement to relief. Ashcroft, 129 S.Ct. at 1950; Twombly, 550 U.S. at 555; Fed. R. Civ. P. 8(a)(2).

A court should assume the truth only of "well-pleaded factual allegations," and then may proceed to determine whether the allegations "plausibly give rise to an entitlement to relief." Ashcroft, 129 S.Ct. at 1950.

**B.      § 1983 Claims Premised on the Conduct of Plaintiff's Criminal Case Are Barred by <u>Heck v. Humphries</u>**

In the case of <u>Heck v. Humphries</u>, 512 U.S. 477 (1994), Roy Heck had been convicted in Indiana state court of voluntary manslaughter for the death of his wife and sentenced to 15 years imprisonment. <u>Id.</u> at 478. While a direct appeal of his state court conviction was pending, Heck filed a damages action under 42 U.S.C. § 1983, alleging that the prosecutors and police in his case had violated his constitutional rights under color of state law by engaging in an unlawful, unreasonable and arbitrary investigation, knowingly destroying exculpatory evidence, and using an illegal voice identification procedure at trial. <u>Id.</u> at 478-79. Importantly, Heck did not seek any action from the district court which would have invalidated his conviction or caused him to be released from prison. <u>Id.</u> at 479.

The Court began its analysis by noting that "§ 1983 creates a species of tort liability." <u>Id.</u> at 483. It then stated that Heck's claim in this case was most closely analogous to a common-law claim for malicious prosecution. <u>Id.</u> at 484. One element of malicious prosecution that a plaintiff must prove is that the prior criminal proceeding was resolved in favor of the plaintiff. <u>Id.</u> This, the court noted, "avoids parallel litigation over the issues of probable cause and

guilt . . . and it precludes the possibility of the claimant succeeding in the tort action after having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction." Id. (quoting 8 S. Speiser, C. Krause, & A. Gans, American Law of Torts, § 28:5, at 24 (1991)).

The Court also noted that allowing a convicted defendant to bring a money action for damages based on the same prosecution would be tantamount to allowing a collateral attack on the criminal judgment. Id. at 485. The Court held "that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments" and that this principal applied equally to § 1983 actions. Id. Thus, in order to avoid the tension between the finality of a criminal judgment and a civil action for damages arising out of that criminal prosecution, the Court held that a § 1983 plaintiff who seeks damages arising out of an allegedly unconstitutional conviction or imprisonment or for any other injury caused by actions whose unlawfulness would render a criminal judgment invalid, "a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Id. at 486-87. "A claim for damages bearing that

relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983." Id. at 487.

The holding in Heck v. Humphries is directly on point as to all of Mr. Widvey's claims arising out of the criminal proceedings against him. Mr. Widvey alleges that the defendants violated his constitutional rights in the following ways: (1) by contacting the probation officer and falsely telling the prosecutor that the Mr. Widvey had violated criminal statutes in his dealings with JENCO; (2) by presenting perjured testimony before the state circuit court that convicted him; and (3) by failing to properly investigate claims that Mr. Widvey violated the law.

Since Mr. Widvey's conviction for probation violation has not been invalidated or called into question in any way by any entity with the authority to call that conviction into question, all of the allegations made by Mr. Widvey which arise out of his probation revocation case falls squarely within the prohibition in Heck. None of Mr. Widvey's claims for damages could be entertained without concomitantly calling into question the validity or constitutionality of his underlying state court criminal conviction or his current incarceration.

The court notes that its recommendation for dismissal of Mr. Widvey's § 1983 claims based on events connected with his probation revocation case does not prevent him from raising allowed forms of collateral attack. For

example, Mr. Widvey remains free to seek relief on a petition for a writ of habeas corpus in state court or, after presenting his claims to the highest state court, in federal court.  However, a § 1983 action for damages based on the criminal case cannot be allowed under the current posture of the case.

The court addresses one further issue as to <u>Heck v. Humpries</u>.  None of the three defendants raised <u>Heck</u> as a potential basis for dismissal, though it is, in this court's opinion conclusive.  However, Mr. Widvey sought *in forma pauperis* status when he filed his complaint, and the district court granted him such status.  <u>See</u> Docket Nos. 7, 8.  A district court is allowed to dismiss a complaint any time, *sua sponte*, after *in forma pauperis* status has been granted if the court becomes convinced that the complaint is frivolous or fails to state a claim upon which relief may be granted.  <u>See</u> 28 U.S.C. § 1915(e)(2)(B)(i) and (ii); <u>Hake v. Clarke</u>, 91 F.3d 1129, 1132 & n.3 (8th Cir. 1996); <u>Carney v. Houston</u>, 33 F.3d 893, 895 (8th Cir. 1994); <u>Kane v. Lancaster County Dept. of Corrections</u>, 960 F. supp. 219, 222 (D. Neb. 1997).

A complaint is "frivolous" where the claim is based upon "an indisputably meritless legal theory."  <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989).  Here, it is impossible for Mr. Widvey to prove that his probation revocation sentence has been reversed or called into question by habeas proceedings on that judgment.  Because of the conclusive inability of Mr. Widvey to prove that element of his claim, he cannot state a claim for which relief can be granted.

17

Accordingly, the court finds his claim frivolous and recommends dismissal under Heck.

**C.    The Rooker-Feldman Doctrine Defeats Mr. Widvey's Claims**

All three defendants urge dismissal of Mr. Widvey's complaint on the basis of the Rooker-Feldman doctrine. The court finds dismissal on this basis is warranted as well.

Federal courts, district courts as well as appellate courts, are courts of limited jurisdiction. Rasul v. Bush, 542 U.S. 466, 489 (2004). They can only decide matters for which an affirmative grant of jurisdiction is given, either by the Constitution or by federal statute. Id.

The grant of jurisdiction to district courts is different from the grant of jurisdiction to the Supreme Court. District courts are strictly courts of original jurisdiction. District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 416 (1923). The Supreme Court is mostly a court of appellate jurisdiction, although it, too, has limited original jurisdiction. Id.; 28 U.S.C. § 1257. In matters concerning appeals from final state court judgments, district courts do not have jurisdiction except for habeas petitions under 28 U.S.C. § 2254. Prince v. Arkansas Board of Examiners in Psychology, 380 F.3d 337, 340 (8th Cir. 2004); Lemonds v. St. Louis County, 222 F.3d 488, 492 (8th Cir. 2000). Instead, only

the Supreme Court is empowered to hear appeals of final state court judgments.  See 28 U.S.C. § 1257; Rooker, 263 U.S. at 416.

It is this understanding of the limited and specific roles of the federal district courts and the Supreme Court which is the underpinning of what has become known as the Rooker-Feldman doctrine.  Lemonds, 222 F.3d at 495 (stating that "Rooker Feldman is based squarely on federal law and is concerned with federalism and the proper delineation of the poer of the lower federal courts.").  The doctrine derives from the two Supreme Court cases of the same name cited above.   The holding of those two cases is that, where a party litigates a matter to final judgment in state court, he may not then later bring an action in federal court on the same claim, or on claims that are inextricably intertwined with the claims litigated in state court, such that the federal court action amounts to an explicit or *de facto* overruling of the state court judgment.  Lemonds, 222 F.3d at 492-93; Feldman, 460 U.S. at 482 n.16.  The Supreme Court later clarified the Rooker-Feldman doctrine, stating that the doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005).  Instead, to the extent federal jurisdiction lies at all in such cases, it must lie in the Supreme Court, not the lower district courts.  Id.

19

A "federal claim is inextricably intertwined with a state court judgment 'if the federal claim succeeds only to the extent that the state court wrongly decided the issue before it.' " <u>Lemonds</u>, 222 F.3d at 493 (quoting <u>Pennzoil Co. v. Texaco, Inc.</u>, 481 U.S. 1, 25 (1987) (Marshall, J., concurring). The federal claim and the state court judgment cannot be separated where the granting of federal relief must necessarily rest on the predicate that the state court was wrong. <u>Id.</u> It is not necessary for the application of <u>Rooker-Feldman</u> that the state and federal claims be identical. <u>Id.</u> (citing <u>In re Goetzman</u>, 91 F.3d 1173, 1177 (8th Cir. 1996)). In order to determine if <u>Rooker-Feldman</u> applies in a given case, it is necessary first to ascertain what, exactly, the state court decided so as to be able to determine whether the granting of federal relief would amount to a *de facto* reversal of the state court judgment. <u>Id.</u> (citing <u>Snider v. City of Excelsior Springs</u>, 154 F.3d 809, 811 (8th Cir. 1998); <u>Carchenko v. City of Stillwater</u>, 47 F.3d 981, 983 (8th Cir. 1995)). A litigant cannot circumvent the <u>Rooker-Feldman</u> doctrine solely by recasting what is really an appeal of a state court judgment as an action under 42 U.S.C. § 1983. <u>Bechtold v. City of Rosemount</u>, 104 F.3d 1062, 1065 (8th Cir. 1997) (citing <u>Keene Corp. v. Cass</u>, 908 F.2d 293, 297 (8th Cir. 1990)).

Here, an examination of the state court record reveals that Mr. Widvey strenuously attacked the credibility of Ms. Mink, Ms. Robb, and Mr. Morris at his probation revocation hearing and continued to pursue that argument in his

appeal to the South Dakota Supreme Court. The state courts rejected this argument and found that these witnesses were credible and that their testimony provided sufficient evidence to sustain the trial court's judgment. If this court were to find that these witnesses had lied in the state court proceedings and that, accordingly, Mr. Widvey was entitled to damages as a result of those lies, it would amount to a reversal of the state court judgment. This is exactly what the <u>Rooker-Feldman</u> doctrine prohibits. Accordingly, the court recommends dismissal of Mr. Widvey's complaint on the alternative ground of the <u>Rooker-Feldman</u> doctrine.

The court notes that Mr. Widvey appears to rely inferentially on the result of his jury trial in arguing that defendants lied during his probation revocation trial. The fact that the jury acquitted Mr. Widvey lends support, in his view, to his argument that defendants lied in the earlier probation revocation proceeding. However, such a conclusion is unsupported. As defendants pointed out in their briefs, the standard of proof in a revocation hearing in state court in South Dakota is the preponderance of the evidence standard while the applicable standard of proof in Mr. Widvey's jury trial on the same charges is the beyond a reasonable doubt standard. Thus, the only definitive statement that can be made by this court about the two hearings is that the testimony presented by defendants at the jury trial did not rise to the

level of "beyond a reasonable doubt." Mr. Widvey's acquittal does not prove that defendants lied.

**D.      State Law Privileges Are Inapplicable *Per Se* In a Federal Court Action Predicated on Federal Question Jurisdiction**

The court addresses one final argument raised by Ms. Mink in her motion to dismiss. She argues that South Dakota law provides an absolute privilege for testimony provided in a judicial proceeding and urges dismissal of Mr. Widvey's complaint against her on this ground.

State law determines both the existence and scope of the attorney-client privilege in *diversity* actions. Fed. R. Evid. 501; Gray v. Bicknell, 86 F.3d 1472, 1482 (8th Cir. 1996). If the basis of this court's jurisdiction over the parties was solely the diversity of citizenship of the parties pursuant to 28 U.S.C. § 1332, the law cited by Ms. Mink in her brief would be relevant and applicable.

However, this case is not predicated on this court's diversity jurisdiction. Instead, jurisdiction in this lawsuit is predicated on the presence of a federal question pursuant to 28 U.S.C. § 1331. See Docket No. 1 (invoking 42 U.S.C. § 1983 as the basis for the plaintiff's claims). As to questions of privilege in a lawsuit premised on federal question jurisdiction, the applicable law is "the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience," unless there is a constitutional provision, federal statute, or Supreme Court rule on the subject.

22

<u>See</u> Fed. R. Evid. 501; <u>United States v. Calvert</u>, 523 F.2d 895, 909 (8th Cir. 1975), <u>cert. denied</u>, 424 U.S. 911 (1976).  Thus, the state court cases and state court statutes cited by Ms. Mink in her brief are inapplicable to the question of privilege in this federal question case.  Accordingly, the court will not address whether there is a privilege applicable to Ms. Mink in this case and, if so, whether it merits the dismissal of the claims against her, especially because the court has already recommended dismissal on two independent bases.

## CONCLUSION

Based on the foregoing discussion, it is recommended that the motions to dismiss by all three defendants [Docket Nos. 24 and 25], be granted in their entirety.

## NOTICE TO PARTIES

The parties have ten (10) days after service of this report and recommendation to file written objections unless an extension of time for good cause is obtained.  <u>See</u> 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(2).  Failure to file timely objections will result in the waiver of the right to appeal questions of fact.  Objections must be timely and specific in order to require *de*

*novo* review by the district court.  <u>See</u> <u>Thompson v. Nix</u>, 897 F.2d 356 (8th Cir.

1990); <u>Nash v. Black</u>, 781 F.2d 665 (8th Cir. 1986).

Dated October 28, 2009.

BY THE COURT:

/s/ *Veronica L. Duffy*

VERONICA L. DUFFY
UNITED STATES MAGISTRATE JUDGE